THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. MICHAEL J. O'CONNELL, Appellant.

*Trial for manslaughter — manner, demeanor and speech of the accused may be shown — previous intercourse of the prisoner and the person killed — error in admitting evidence, how cured — a sufficient cause, when presumed to be the cause — charge to the jury.*

Upon the trial of an alleged criminal his manner, demeanor and speech upon being charged with the crime have always been received as competent evidence on the question of his guilt or innocence.

Where one of the ingredients of a crime is the willfulness of an assault, the condition of the mind of the prisoner towards the person assaulted is an element in the case which the jury has a right to consider, and their previous intercourse necessarily throws light upon such question, and proof in regard thereto is admissible in evidence upon the trial.

An erroneous admission of evidence on the trial of a person charged with a crime is cured by the granting of a motion to strike out the objectionable testimony.

When upon a trial on a charge of manslaughter a cause sufficient to produce the death is proven, and no other cause is shown to have existed, there is a sufficient basis for the conclusion that the death arose from the known cause rather than from some cause, the existence of which there is not the slightest evidence to establish.

Upon the trial of a person for the crime of manslaughter, the judge in his charge to the jury stated: "Now, gentlemen, to convict a person of homicide, two things must be shown. There must first be direct evidence that there was a person killed. That evidence has been introduced here. This woman is dead."

*Held*, that the judge intended to charge, and his charge only imported, that the person alleged to have been killed was dead.

APPEAL by the defendant, Michael J. O'Connell, from a judgment of the Supreme Court, rendered at the New York Oyer and

Terminer on the 25th day of May, 1892, convicting the defendant of the crime of manslaughter in the second degree.

*Chas. W. Brooke*, for the appellant.

*John D. Lindsay*, for the respondent.

VAN BRUNT, P. J.:

The defendant in this action was convicted upon an indictment charging him with manslaughter, in having on the 11th of May, 1890, willfully and maliciously caused the death of one Julia Ward, otherwise known as Julia O'Connell. The testimony was that the defendant and the deceased were living together apparently as man and wife at No. 301 East Thirty-third street in the city of New York, occupying a bedroom in apartments rented from James King and wife, from sometime in April, 1890, until May of the same year, when he killed her.

In considering the points which have been raised upon this appeal it is not necessary to recite in detail the testimony which was offered. It will be sufficient to say that evidence was introduced showing that a scuffle had taken place in defendant's bedroom between the defendant and a brother-in-law of James King to which attention was directed by the calling of the deceased for help, which scuffle was ended by the intervention of James King, who took his brother-in-law out· of the room. The defendant remained in his bedroom and the deceased and some other persons were sitting in the kitchen — which was a room near the bedroom — and the deceased was telling the others what had occurred. The defendant during the recital came in and made a grab for the hair of the deceased, caught her by the back of the neck and dragged her into her room, where he gave her a kick on the left side in the region of the stomach, she falling between the bedstead and a dressing case. The deceased was helped from the floor and shortly after went to bed, and subsequently died from a miscarriage on the Thursday following the assault, which had occurred on a Sunday.

It is urged that the court erred in permitting a witness to testify to what she heard the deceased say to the defendant upon the Tuesday preceding her death. This evidence is as follows: " Q. Did you hear Mrs. O'Connell say anything to him on·that Tuesday ? A.·

I heard her say he was the cause of her death; that she knew she would never get over it. That was in his presence. Q. What were the exact words? [This was objected to. Objection overruled, and exception taken, and the question substantially repeated.] A. I heard her say he was the cause of her death. Q. Use her exact language? A. 'Mike, you are the cause of my death.' Q. Anything else? A. No, sir; not that I remember."

She further stated that this was all she heard her say. When asked "What did he say to that?" she answered, he said he was sorry for what he done. If he had not been intoxicated he would not have done it.

This evidence seems to have been clearly competent. The charging of a defendant with a crime and his manner, demeanor and speech, have always been received as competent evidence on the question of his guilt or innocence.

It is further urged that the court erred in permitting the witness Ellen Riordan to testify to a conversation which occurred six months prior to the death of the deceased, and which did not in any manner relate to any threat upon the part of the deceased or to any matter which could be the subject of the charge contained in the indictment or have any relation thereto.

This evidence was admitted entirely without objection, and, in any event, we do not see but that it was competent, as it showed the circumstances under which the parties were living together and the disposition which this defendant had exhibited towards the deceased upon previous occasions, by his own confession. One of the ingredients of the crime depended upon is the willfulness of the assault, and the condition of mind of the defendant towards the deceased was certainly an element which the jury had a right to consider, and their previous intercourse necessarily threw light upon such questions.

It is further urged that the court erred in permitting the witness to testify to the occurrence on the Tuesday preceding the death of the deceased, and to statements alleged to have been made by the witness to the defendant at that time. The question which was objected to was entirely competent. The witness and the defendant met on this Tuesday after the assault, and she was asked: "What talk did you have there?" An objection to this question

FIRST DEPARTMENT, MAY TERM, 1894.　　　　　[Vol. 78.

was overruled, and the witness went on and answered. Another question was put and answered; and then a motion was made to strike it all out, which motion was granted. Thus, if any of the testimony was incompetent, which the answer to the question first objected to does not appear to be, it was cured by the granting of the motion to strike it out.

It is further urged that the court erred in overruling the motion to advise the acquittal of the defendant at the close of the People's case, upon the ground that there was no evidence tending to show that the kicks or blows administered to the deceased by the defendant occasioned the miscarriage which was the immediate cause of her death. And attention is called to the provisions of section 181 of the Penal Code which provides that " No person can be convicted of murder or manslaughter unless the death of the person alleged to have been killed, and the fact of killing by the defendant, as alleged, are each established as independent facts, the former by direct proof, and the latter beyond a reasonable doubt."

It appears that the deceased was examined by two physicians prior to her death, and that one physician found bruises on the abdomen and some on the limb, and that another physician who saw the body immediately after death observed marks on some parts of the abdomen. The physician who performed the autopsy testified to having found bruises on the right leg and thigh, but found no evidence of any blow on the stomach. He further testified that a light blow on the abdomen would probably have disappeared in a day or two, and he did not think a severe blow on the abdomen would be as apt to leave a mark as upon the limbs, because the tissues would be so soft that they would not show any mark. He further testified that the violence testified to by the witness would have been sufficient to cause the miscarriage in the absence of any other attributable cause. Another physician concurred as to the probable effect of the violence used by the defendant in bringing about the miscarriage. This evidence was uncontradicted except as to the possibility suggested by the counsel for the defendant on cross-examination, of the miscarriage being brought on by some cause other than that shown by the evidence.

It is clear that a cause sufficient to produce a result being proven, and no other cause being shown to have existed, there is a sufficient

basis for the conclusion that the result arose from the known cause rather than from some cause the existence of which there is not the slightest evidence to establish. If, when a sufficient cause to produce a given result is proven, it is necessary to negative every other possible contingency which might produce the same result, conviction for crimes of violence would certainly be a rarity. There was not only evidence which justified the jury in finding that this assault was the cause of the miscarriage, but the evidence absolutely compelled such a conclusion, and no man could arrive at any different result who was guided by ordinary experience.

It is further urged that the learned judge who presided ·at the trial erred in charging the jury as follows: "Now, gentlemen, to convict a person of homicide two things must be shown. There must first be direct evidence that there was a person killed. That evidence has been introduced here. This woman is dead."

The use of the language quoted in the paragraph, "There must be direct evidence that there·was a person killed," undoubtedly was a *lapsus linguæ* upon the part of the learned judge to which his attention was in no manner called; if it had been it would have undoubtedly have been corrected, and is nothing like as formidable a mistake as that which is contained in the citation of the section to which the learned judge had reference in the points of the counsel for the appellant. The provision of the section is: "No person can be convicted of murder or manslaughter unless the death of the person alleged to have been killed, and the fact of killing by the defendant, as alleged, are each established as independent facts, the former by direct proof, and the latter beyond a reasonable doubt." The evident intention of the court was to quote the language of the section, namely, that there must be direct evidence of the death of the person alleged to have been killed, and not that there must be direct evidence that there was a person killed, because he then goes on and quotes the second subdivision, which is to the effect that the jury must be satisfied beyond a reasonable doubt that the defendant was guilty of causing the death. As has been observed, all that the court had intended to charge the jury was that the first proposition had been established, namely, that the person alleged to have been killed was dead, and that is all that his language imported.

Upon an examination of the whole case it appears that this

defendant was guilty of a most brutal and unprovoked assault; that such had been his conduct towards this woman on previous occasions that the penalty which he received for his brutality not only did not exceed that which it merited but by no means equalled it.

The conviction should be affirmed.

FOLLETT and PARKER, JJ., concurred.

Conviction and judgment affirmed.